[No. 3449.]

## Pedro Hernandez v. The State.

1. **Perjury — Indictment.** — See the statement of the case for an indictment for perjury highly commended by this court for the skill and accuracy with which it charges the offense, despite the complexity of the facts necessary to be alleged. See the opinion for an elucidation of the propriety of the contested allegations.

2. **Perjury** may be committed by falsely swearing to the allegations of an affidavit in support of a motion for new trial filed by a person other than the affiant, although the motion for new trial was not filed within two days after the conviction. When the perjury is assigned upon such an affidavit, the materiality of the alleged false statements is not to be considered with reference to their bearing upon the guilt or innocence of the person who filed the motion for new trial, but with reference to their bearing upon the motion itself, and their *prima facie* effect upon the determination of that motion.

3. **Perjury — Evidence — Corroboration of a Single Witness.** — Article 746 of the Penal Code provides that, "In trials for perjury, no person shall be

convicted except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence, as to the falsity of the defendant's statements under oath; or upon his own confession." And by article 745 it is provided that, "In all cases where by law two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction." These provisions are statutory declarations of the common law, and are founded on substantial justice. If the evidence in a trial for perjury presents "only oath against oath," it cannot warrant a conviction.

4. SAME.— In using the words "strongly corroborated," said article 746 means that the corroborating evidence must tend to show the falsity of the defendant's oath in a material matter, and, in the opinion of both the court and the jury, must be cogent, and be calculated to make a deep or effectual impression upon the mind. But the corroboration may be by circumstantial evidence, consisting of proof of independent facts which together tend to establish the falsity of the oath, and which together strongly corroborate the testimony of the single witness who has testified to its falsity.

5. SAME.— In a trial for perjury alleged to consist in false statements made by the accused in his affidavit in support of a motion for new trial filed by one H., who was previously convicted of theft of a colt, the State was allowed, over objection by the defense, to adduce evidence tending to prove that the said H. was guilty of the theft for which he had been convicted. Said evidence was offered and admitted as corroborative of the testimony of the only witness who directly testified to the falsity of the statements assigned as perjury. See the opinion *in extenso* for the grounds upon which, in view of the other proof in this case, the evidence is *held* to have been correctly admitted because relevant to the hypothesis advanced by the State in the present case, and corroborative of the testimony of the single witness who directly deposed to the falsity of the sworn statements assigned as perjury.

6. PRIVILEGED COMMUNICATIONS.— An attorney at law is not only disabled by the Code of Procedure, article 733, to disclose any communication made to him by his client during the existence of that relationship, but also "any other fact which came to the knowledge of such attorney by reason of such relationship." This provision is not restricted to facts communicated to the attorney by his client, but extends to all facts which came to the knowledge of the attorney from any source whatever, because of the relationship.

7. SAME — CASE STATED.— At the trial of appellant for perjury, alleged to have been committed in an affidavit made by him in support of a motion for new trial filed by one H., who had been convicted of theft, the State was allowed, over objection by the defense, to introduce the attorney of said H., and prove by him that he, at the instance and on the information of appellant, wrote the affidavit on which the perjury is assigned. This proof was objected to on the ground of privileged communications within the scope of article 733, Code of Procedure. *Held,* that the objection was well taken, and the trial court erred in overruling it, and permitting the attorney to disclose facts communicated to him by reason of the relationship existing between him and the client in whose interest the communications were made by the appellant. Note the exposition of said article 733, Code of Procedure, given in the opinion in this case.

8. PERJURY — EVIDENCE.— To convict of perjury committed by false statements in an affidavit, made by an affiant who signs his name by making his mark, there must be proof that he knew and understood the statements set out in

the affidavit, and alleged to be false. It is not necessary, however, that this proof be certified in the *jurat* to the affidavit, nor that the officer who certified the *jurat* be introduced to prove the fact. Like other facts within the general rules of evidence, it may be established by the testimony of any competent witness.

9. SAME.— The *jurat* to the affidavit on which the perjury is assigned does not show that the affidavit was read and explained to the accused, who subscribed it by making his mark to it. It was in proof that the accused could neither speak nor read the English language, in which the affidavit was written. To prove that the accused knew and understood the contents of the affidavit, the State introduced the officer before whom it was sworn, and he testified that he could not say whether the contents of the affidavit were known to the accused,— that he, the witness, did not read it to the accused, but simply inquired if he knew the contents of it, and, receiving an affirmative answer, administered the oath to the accused. The witness does not state whether his question was propounded to and answered by the accused, or whether it was propounded to and answered by the attorney who brought the affidavit for the witness's official authentication. *Held,* that this proof does not suffice to show knowledge by the accused of the contents of the affidavit.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. Noonan.

Convicted of perjury, the appellant was awarded, as punishment, a term of five years in the penitentiary. The charging part of the indictment reads as follows:

". . . That on the 9th day of the month of January, A. D. 1882, in the district court of Bexar county and State of Texas, in cause number 1577 on the criminal docket of said court, entitled *The State of Texas* v. *Louis Hernandez*, the said Louis Hernandez was in due form of law tried upon an indictment then and there duly and legally depending in said court against him in the cause aforesaid, and of which said district court then and there had jurisdiction to try and determine, and in which said indictment he, the said Louis Hernandez, was then and there duly and legally charged with having on the 16th day of the month of May, A. D. 1881, in the said county of Bexar and State of Texas, fraudulently and feloniously stolen, taken and carried away from the possession of Sam Barker, a certain horse, to wit, a filly colt, the property of him, the said Sam Barker, without his consent, and with the fraudulent and felonious intent to deprive the said owner of the value thereof and to appropriate the same to the use and benefit of him, the said Louis Hernandez; that at and on the trial of the said Louis Hernandez on the said 9th day of January, A. D. 1882, in the said district court of Bexar county, on the said indictment and charge aforesaid, in the cause

aforesaid wherein the State of Texas was plaintiff and Louis Hernandez was defendant, the said Louis Hernandez was then and there in due and legal form and requirements of law tried and convicted of the theft of said horse, to wit, a filly colt as aforesaid, and his punishment therefor assessed at confinement in the State penitentiary for the term of five years. That thereafter, to wit, on the 11th day of February, A. D. 1882, the said Louis Hernandez filed in the said district court of Bexar county his motion for a new trial in the said cause number 1577, entitled *The State of Texas* v. *Louis Hernandez;* that, as a part of said motion for a new trial, and in support thereof, so made as aforesaid by the said Louis Hernandez in the cause aforesaid, one Pedro Hernandez, after being duly and legally sworn by one George R. Dashiell, the then and there duly elected, qualified and acting clerk of the district court in and for the said county of Bexar and State of Texas, and as such clerk of the district court aforesaid, was then and there duly and legally authorized and empowered to administer oaths and take depositions, on the 26th day of the month of January, in the year of Our Lord 1882, in the said county of Bexar and State of Texas, did then and there deliberately, wilfully, corruptly, falsely, knowingly, voluntarily and feloniously, under the sanction of his, the said Pedro Hernandez's, oath, duly and legally administered by him, the said George R. Dashiell, as clerk of the district court aforesaid, unto him the said Pedro Hernandez as aforesaid, make a false statement in writing, by a voluntary declaration and oath, under circumstances in which an oath was required by law, and in and during the stage of a judicial proceeding in the said criminal cause aforesaid numbered 1577 on the criminal docket of said district court of Bexar county, entitled *The State of Texas* v. *Louis Hernandez*, which said deliberate, wilful, corrupt, false, known, voluntary and felonious statement in writing, and voluntary declaration and oath aforesaid of him, the said Pedro Hernandez, then and there was, and now is, in words and figures substantially as follows, that is to say:

"THE STATE OF TEXAS, }
    *County of Bexar,*    }

"Personally appeared before me Pedro Hernandez, who, after being duly sworn, upon his oath says that about six months ago one Blas Hernandez and Sostenes Carrasco and George de la Zerda said to me 'let us brand a colt — a filly colt of Sam Barker, with the brand of Louis Hernandez, and afterwards notify Barker that Louis Hernandez had branded the filly.' I then said I would not do so, as Barker was my friend, and that I would look out for the stock

of my friend, and it should not be done. Blas Herrera then said, 'I will do it.' Afterwards Sostenes Carrasco said: 'We have (meaning Blas Herrera, Sostenes Carrasco and George de la Zerda) branded the filly of Barker with the brand of Louis Hernandez, and then killed the mare.'

his

" Pedro ⋈ Hernandez."

mark

"Sworn to and subscribed before me this 26th day of January, 1882.        Geo. R. Dashiell, Cl'k D. C. B. C."

"That in the said motion for a new trial so made as aforesaid by the said Louis Hernandez, as aforesaid, wherein the State of Texas was plaintiff and Louis Hernandez was defendant, and the issue therein joined, it became then and there a material question and inquiry on the trial, hearing and disposition of said motion for a new trial, which said motion for a new trial the said district court of Bexar county, by and through the Honorable George H. Noonan, the duly elected, qualified and acting judge thereof, then and there had jurisdiction and authority to try and determine, whether or not the said Blas Hernandez (meaning Blas Herrera), Sostenes Carrasco and George de la Zerda, said to him the said Pedro Hernandez: 'Let us brand a colt, the filly colt of Sam Barker, with the brand of Louis Hernandez, and afterwards notify Barker that Louis Hernandez had branded the filly,' and whether or not the said Blas Herrera said to him, the said Pedro Hernandez, 'I will do it' (meaning I will brand the colt of Sam Barker in the brand of Louis Hernandez), and whether or not Sostenes Carrasco said to the said Pedro Hernandez 'We have,' meaning Blas Herrera, Sostenes Carrasco and George de la Zerda, 'branded the filly of Barker with the brand of Louis Hernandez, and then killed the mare;' that the said Pedro Hernandez, after being duly and legally sworn as aforesaid, wickedly combining, intending and contriving to pervert the ends of justice and the law, and to cause and secure the motion for a new trial in the cause aforesaid, so made as aforesaid by the said Louis Hernandez, to be granted by the court aforesaid, did, on the said 26th day of the month of January, A. D. 1882, in the said county of Bexar and State of Texas, deliberately, wilfully, corruptly, wickedly, falsely, knowingly and feloniously make said false statement in writing by a voluntary declaration and oath as aforesaid; that said deliberate, wilful, corrupt, known, voluntary and felonious statement in writing, so made as aforesaid by the said Pedro Hernandez, by a voluntary declaration and oath as aforesaid, was then and there false, deliberate and wilful, and then and there was well

known to him, the said Pedro Hernandez, to be so false, deliberate and wilful when so made as aforesaid. That in truth and in fact the said Blas Herrera, Sostenes Carrasco and George de la Zerda, never, at any time, said to Pedro Hernandez: 'Let us brand a colt, a filly colt of Sam Barker, with the brand of Louis Hernandez, and afterwards notify Barker that Louis Hernandez had branded the filly;' that in truth and in fact no such conversation was ever had, and no conversation of similar import was ever had at any time between the said Blas Herrera, Sostenes Carrasco and George de la Zerda with the said Pedro Hernandez; that in truth and in fact the said Blas Herrera did not say to the said Pedro Hernandez that 'I will do it;' that in truth and in fact the said Sostenes Carrasco never said to the said Pedro Hernandez: 'We have,' meaning Blas Herrera, Sostenes Carrasco and George de la Zerda, 'branded the filly of Sam Barker with the brand of Louis Hernandez, and then killed the mare;' that in truth and in fact there never was any conversation by and between the said Blas Herrera, Sostenes Carrasco and George de la Zerda with the said Pedro Hernandez with reference to the said colt of Sam Barker.

"And so the grand jurors aforesaid, upon their oaths aforesaid, do say and present that the said Pedro Hernandez, at the time and place aforesaid, in the manner and by the means aforesaid, and in the form aforesaid, did then and there commit wilful, deliberate, knowing and wicked perjury; contrary," etc.

Alexander Cass was the first witness for the State. He testified that he had known the defendant for a good many years, and he knew Louis Hernandez. Prior to the conviction of Louis Hernandez in January, 1882, of the theft of a filly, and his confinement in the penitentiary, he and the defendant lived on the Leon creek, about eight miles distant from San Antonio. Witness was in possession of some knowledge of the theft of Sam Barker's colt, for which Louis Hernandez was convicted and confined in the penitentiary. In the spring of 1881, the exact date had escaped the witness's memory, the witness, being on his return journey from San Antonio to his ranch on the Medina river, accompanied by his wife, saw Louis Hernandez, and a young man whom he did not know, in possession of the said colt. They had the colt roped and tied to a tree, and the animal was struggling to free itself. This was on the Leon creek, just beyond the crossing from San Antonio, and about eight miles distant from that city. Witness's attention was first attracted by seeing Louis Hernandez descend from a bent or stooping tree. The stranger was then sitting at the root of the tree.

A gun was leaning up against the trunk of the tree, and a pistol, in the scabbard, was hanging from one of the limbs. Witness saluted Louis Hernandez and the stranger as he passed them, and noticed other horses than the colt standing about.

After proceeding some little distance beyond the point where he saw Louis Hernandez, the stranger and the colt, the witness saw a mare, which he recognized as one that belonged to Sam Barker, lying by the side of the road. Witness stopped his buggy, left it in charge of his wife, and went to where the mare was lying. The mare had been shot twice through the body, and was breathing her last when the witness reached her. Witness's wife, whose recent illness had left her very nervous, insisted upon the witness's return to the buggy, and the witness was, therefore, unable to make as thorough an examination of the surroundings as he desired. He, however, saw that horses had been running, turning and stopping about the place where the dead mare lay. On his journeys between his ranch and San Antonio, going to and fro, the witness had very often seen the mare described. He had always known the mare to run in the range in which she was killed, and this range was near the Hernandez ranch. She had, when killed, a brown filly yearling colt, and both she and the colt belonged to Sam Barker. Witness knew Blas Herrera well, and knew that he was not present when Louis Hernandez had the Barker colt tied to the tree as described. He also knew Sostenes Carrasco and George de la Zerda, the latter of whom died in San Antonio in the spring of 1881. Sostenes Carrasco left San Antonio soon after the conviction of Louis Hernandez, and is now living in the Republic of Mexico. While he lived in Texas, Carrasco lived on the defendant's ranch, from which ranch he removed to Mexico. Blas Herrera was the uncle of the witness's wife. Witness had no ill-feeling whatever towards the defendant.

Blas Herrera was the next witness for the State. He testified that he knew the defendant and was related to him by marriage, as he was also to Sostenes Carrasco. Witness never in his life spoke to the defendant about branding the colt of Sam Barker in the brand of Louis Hernandez. Witness never at any time or place in the presence of Carrasco and de la Zerda had with the defendant such a conversation as that the defendant alleged in his affidavit in support of the motion for new trial in the case of *The State of Texas* v. *Louis Hernandez*, filed in the district court of Bexar county, on January 26, 1882, and which is set out at length in this indictment. Witness never, at any time or place, said to defendant:

"Let us brand a colt — a filly colt of Sam Barker, with the brand of Louis Hernandez, and afterwards notify Sam Barker that Louis Hernandez branded the filly." The defendant never, at any time or place, said to witness: "I will not do so, as Sam Barker is my friend, and I will look out for the stock of my friend, and it shall not be done." Witness never, at any time or place, said to defendant, in reply to such statement: "I will do it." No such conversation was ever had, nor such a subject discussed by the witness with the defendant or any one else. Such an idea had never suggested itself to the mind of the witness. The affidavit in its entirety, so far as it related to the witness, was false — a pure fabrication from beginning to end. Witness knew Sostenes Carrasco, and knew George de la Zerda in his life-time. Carrasco removed to the Republic of Mexico from the ranch of the defendant shortly after the conviction of Louis Hernandez, and had not since returned. George de la Zerda, who lived on his ranch on the Leon creek, died in the city of San Antonio, where he had gone for medical treatment, in the spring of 1881. Witness harbored no ill feeling towards defendant, and would not, under any circumstances, do him an injustice. Carrasco and the defendant were relatives.

George R. Dashiell was the next witness for the State. He testified that he was, on the 26th day of January, 1882, and for several years prior to that date had been, clerk of the district court of Bexar county. He was well acquainted with the defendant, and had known him for ten or twelve years. He remembered that while he was such clerk, the defendant appeared before him and made an affidavit in support of a motion for new trial in cause No. 1577, entitled *The State of Texas* v. *Louis Hernandez.* Louis Hernandez had been convicted of stealing a horse from Sam Barker, had made a motion for new trial, and the affidavit referred to was made by the defendant in support of that motion. Witness identified the affidavit in evidence as the one he referred to. The defendant came to the witness with Mr. M. G. Anderson, who was Louis Hernandez's attorney, and Anderson told witness that he wanted defendant qualified to the truth of the affidavit. Witness then in due form administered the oath to defendant, and he subscribed and swore to the truth of the contents before the witness as clerk of the district court. Witness then gave the affidavit to Anderson, who took it off. The affidavit was subsequently returned to the witness, and by him was filed among the papers, in support of the said motion of Louis Hernandez for a new trial. Witness was at that time the duly elected, qualified and acting clerk of the district court of Bexar county, and

as such clerk duly administered the oath to the defendant at his request.

Cross-examined, the witness testified that the defendant knew the contents of the affidavit when he subscribed and swore to it. It was the recollection of the witness that he did not read the affidavit to the defendant, but asked him if he knew its contents, and, on receiving his affirmative answer, administered the oath to him, after which he subscribed to it. Witness did not retain possession of the affidavit after defendant swore and subscribed to the truth of its contents, but gave it to Anderson, who took it off with him, leaving in company with the defendant. Witness spoke the Spanish language but little, and the defendant spoke English equally as imperfectly. It was the recollection of the witness that the affidavit was not returned and filed on the same day that it was subscribed and sworn to, but subsequently.

M. G. Anderson was next tendered as a witness for the State. He was asked, on behalf of the defendant, whether or not he was the attorney for Louis Hernandez at the time that the affidavit in support of the motion for new trial in the case of *The State* v. *Louis Hernandez* was procured from the defendant. Answering that he was, the defense objected to the competency of the said witness, Anderson, on the ground that he could not lawfully be allowed to testify to any matter which came to his knowledge as such attorney. The objection being overruled, the witness testified that he spoke, wrote and understood the Spanish language quite as well as he did the English. He knew Louis Hernandez, who was now a convict, serving a term in the penitentiary. Witness and his brother, T. G. Anderson, defended Louis Hernandez on his trial, some two years previous to this trial, for the theft of Sam Barker's filly. Louis Hernandez was convicted upon that trial, and in accordance with the verdict was sentenced to a term of five years in the penitentiary. After the conviction of Louis Hernandez, a motion for new trial was made and filed. Witness identified the affidavit exhibited to him, and was familiar with the circumstances under which it was made.

While the witness was sitting in his office on the day that the date shows the affidavit to have been made, the defendant came in and said that he was anxious to do anything he could to serve his kinsman Louis Hernandez in his emergency. He then, in the course of the conversation that ensued, made the statement which witness presently reduced to writing in English, just as it appears in the affidavit. He then translated and explained the same in Spanish to

the defendant, and the two went together to the office of George R. Dashiell, where the defendant signed and swore to the contents of the affidavit before the said George R. Dashiell as such clerk. It was the belief of the witness that the defendant fully understood the contents of the affidavit, because he, witness, fully explained it to him in his own, the Spanish, language. After the affidavit was sworn and subscribed to, witness took it back to his office to use as supporting evidence to the motion for new trial in the Louis Hernandez case, which he was then preparing. The said motion was filed in the district court but was overruled, when the cause was appealed to the court of appeals and affirmed.

The State next introduced in evidence the indictment in case No. 1577, entitled " *The State of Texas* v. *Louis Hernandez*," for the theft of Sam Barker's filly, together with the indorsements and file marks thereon, and also the motion for new trial, which set up as one ground the newly discovered evidence of this defendant as stated in the affidavit. The affidavit itself was also introduced in evidence, and the order of the district court of Bexar county overruling the said motion for new trial, the record of the final judgment and sentence, the notice of Louis Hernandez's appeal to the court of appeals, and the mandate of affirmance of the judgment of the court below by the court of appeals.

The questions discussed in the opinion were among those presented by the motion for new trial.

*Walthall & Callaghan*, for the appellant. The rule is uniform, that intendment will not be called in to aid an indictment on a prosecution for perjury. (*The State* v. *Webb*, 41 Texas, 72; *Rex* v. *Hepper*, 1 Car. & Payne, 608; *Regina* v. *Parker*, 1 Car. & Marsh., 639.)

In an indictment for perjury the indictment must show upon its face that the court had jurisdiction of the cause in which the perjury is alleged to have been committed; *i. e.*, if in a criminal proceeding in which a felony is charged, it must show that it was on presentment or indictment of a *grand jury*. (*Steinston* v. *The State*, 6 Yerg., 531; *The State* v. *Webb*, 41 Texas, 67; *Regina* v. *Rawlins*, 8 Car. & Payne, 439.)

An indictment for perjury must show upon its face the plea of the defendant in the cause in which the perjury is alleged to have been committed, and that an issue was joined between the State and the defendant. It is not sufficient to say that " Louis Hernandez was in due form of law tried upon an indictment then and there duly and legally depending in said court." ( *Webb* v. *The State*, 41

Texas, 67; 2 Bishop, Cr. Pr., § 909; *The State* v. *Gallimon*, 2 Iredell, 372.)

The statement must be material. Whether or not Blas Herrera said what he is alleged to have said by Pedro Hernandez could have had no effect in determining whether or not Louis Hernandez was guilty. (Penal Code, art. 193.)

A trial *must* be applied for within two days after the conviction, or cause must be shown for making the application later. (Code Crim. Proc., art. 779.)

The materiality of the testimony is to be ascertained by reference to the *time when it was given*, and if the time has elapsed when it would be effective, then perjury cannot be assigned upon it. (3 Greenl. Ev., § 196.)

It appears from the indictment in this cause that Louis Hernandez was convicted on the 9th day of January, 1882; and that on the 11th day of February, 1882, he filed his motion for a new trial, and it does not appear therein that any reason whatever was shown to the court for the delay in filing the motion. The affidavit which was alleged to contain the false statement was made on the 26th day of January, 1882.

The court erred in allowing the county attorney to prove the facts and circumstances on which Louis Hernandez had been convicted in cause No. 1577.

It is submitted as a proposition that testimony tending to show the guilt of Louis Hernandez was immaterial and irrelevant in the trial of the question of the guilt or innocence of Pedro Hernandez, and could have no effect except to mislead the jury, and to create a prejudice against him.

The court erred in allowing one M. G. Anderson, an attorney of this court, and the attorney of Louis Hernandez, in cause No. 1577 aforesaid, to testify in behalf of the State in relation to the affidavit prepared by said M. G. Anderson and sworn to by this defendant, and made a part of the motion for a new trial in cause No. 1577 aforesaid; and to detail facts and circumstances communicated to him as attorney in said cause No. 1577, for the preparation of said motion and said affidavit.

It is not lawful for an attorney to testify concerning, or to disclose, any communication he receives *in his professional capacity*, either from a client, or on his account and for his benefit. (1 Greenl. Ev., § 237; Roscoe's Cr. Ev., 188; *Greenough* v. *Gaskell*, 1 Mylne & Keen, 104; *Clark* v. *Clark*, 1 Moody & Robinson, 3; *Moore* v. *Terrell*, 4 B. & Ad., 870; Story, Eq. Pl., § 600; *Foster* v. *Hall*, 12 Pick.

(Mass.), 89; Bac. Abr., Evidence, A., 3; *Doe* v. *Harris*, 5 Car. & P., 592.)

M. G. Anderson, Esq., testified in substance — that he is an attorney at law, and was attorney for Louis Hernandez in case No. 1577; that after his conviction, the defendant, Pedro Hernandez, came into his office and said: " I want to do all I can for my kinsman Louis Hernandez, who has been convicted," etc. He (the defendant) then related to him (Anderson) all the facts as stated in the affidavit, and he (Anderson) wrote them down in English, and translated the paper into Spanish, and explained it to Pedro Hernandez, who signed and swore to it.

The court erred in refusing to set aside the verdict and to grant to the defendant a new trial, because it is apparent from the statement of facts that the defendant was convicted on the testimony of one witness only, not corroborated strongly by other evidence as to the falsity of the defendant's statements under oath. (Code Crim. Proc., art. 746.)

To authorize a conviction for perjury on a false statement contained in an affidavit made by a marksman (and especially if the affidavit be in a language not understood by the affiant), it must be proved *by the officer who administered the oath* that the affidavit was read over to the affiant, and explained to him. Other evidence will not be allowed. (*Rex* v. *Mary Hailey*, 1 Car. & Payne, 258.)

The affidavit on which the prosecution is founded was signed by the defendant by making his mark. The defendant does not understand the English language (the language in which the affidavit is written). Geo. R. Dashiell, the clerk before whom the affidavit was sworn to, testified that " I cannot say whether or not the defendant knew the contents of this affidavit at the time he signed and swore to it before me as clerk of this court. My recollection is I did not read it to him, but simply asked if he knew the contents, and upon receiving an affirmative answer, I administered to him the oath and he signed the affidavit. . . . I speak Spanish but very little, and the defendant spoke English very imperfectly."

It will be observed that the clerk did not ask the defendant if he understood it — and could not have done so because of his imperfect Spanish and the defendant's imperfect English.

*J. H. Burts*, Assistant Attorney-General, for the State. The character of offense alleged in the indictment in this cause is one that has become alarmingly common in the administration of the criminal law, and perhaps has been the means of thwarting and

preventing justice in more cases than all other causes or obstructions of·justice combined, and yet it has passed unnoticed and gone unpunished until the numerous sympathizers with habitual violations of the penal laws have come to regard the offense of perjury as of no consequence, and as a legitimate method of defeating prosecutions for violations of those laws. Hence, in view of the necessity for a vigorous enforcement of the laws enacted for the reformation of offenders, the suppression and prevention of crime, this is an unusually important case, and demands a careful consideration.

There is but one bill of exception outside of the statement of facts, and this, it is submitted, is not well taken because it merely states that the county attorney, in his closing argument to the jury, commented on the conviction of Louis Hernandez, and its affirmance in the court of appeals, as evidence against the defendant in this cause. To which the defendant objected, and which objection was by the court overruled; to which overruling the defendant excepted.

Now, what the comments of the county attorney were does not appear; nor does it appear why appellant objected, nor are the grounds of objection shown. It is true the court explains that this prosecution was based upon the case and the proceeding in the case of *The State* v. *Louis Hernandez*, and the records of said case were in evidence. Consequently, the court could not well eliminate the Louis Hernandez case from the argument, and this would appear to be sufficient answer to the objection interposed, as it cannot be otherwise than proper for counsel in argument to comment on the testimony in the case argued, else the whole theory of argument of causes would be destroyed, and the same could not be argued at all.

But, as before seen, the matters presented by the bill are "too vague and indefinite for review." (*Cohea* v. *The State*, 11 Texas Ct. App., 153; *Davis* v. *The State*, 14 Texas Ct. App., 645; *Hobbs* v. *The State*, 16 Texas Ct. App., 517.)

There is an exception saved to the testimony of M. G. Anderson in the statement of facts, on the ground that he was the attorney for Louis Hernandez when he learned the facts to which he testified in this cause. Communications become privileged alone for the benefit of attorneys and clients, and not for outside parties. And in this case neither Anderson nor ·his client, Louis Hernandéz, claimed the privilege, and they alone could do so. (*Hamilton* v. *The People*, 29 Michigan, 183, and authorities cited.)

Anderson did not claim the privilege and Louis Hernandez was

beyond the reach of harm from it, and it was not disclosed that the matters testified to were communications from Louis Hernandez to Anderson, who was not the attorney for appellant in this cause. The exception saved, then, was not well taken.

The indictment was sufficient. The evidence sustains the verdict, and the judgment ought to be affirmed.

WILLSON, JUDGE. After a careful consideration of the indictment in the light of the exceptions urged against it by counsel for appellant, we have reached the conclusion that, under the decisions in this State, it contains every averment essential to charge the offense of perjury.

1. It charges that the criminal action in which the alleged false statement was made was pending, at the time of the commission of the perjury, in the district court of Bexar county, State of Texas, upon an indictment duly and legally depending in said court, and that said court had jurisdiction of said criminal action. It does not charge directly that said indictment had been presented by the grand jury of Bexar county, nor that the defendant therein had pleaded to said indictment. It charges affirmative facts, however, which show that the indictment had been presented in said court by the proper grand jury, and that the defendant therein had pleaded thereto, and had been legally tried and convicted thereon in said court.

2. It is directly averred that the alleged false statement was material, and, besides this direct averment, such facts are alleged as show that the same was material. It is insisted by appellant's counsel that because the alleged false statement was made on a motion for a new trial, which motion was filed more than two days after the conviction, it could not be considered by the court, and was therefore immaterial. "A new trial must be applied for within two days after conviction; but for good cause shown, the court, in cases of felony, may allow the application to be made at any time before the adjournment of the term at which the conviction was had." (Code Crim. Proc., art. 779; *Bullock* v. *The State*, 12 Texas Ct. App., 42.) It appears from the record that the court entertained the motion for a new trial, although not filed within the prescribed time, and considered the same upon its merits. This action was within the discretion of the court, and must be presumed to have been upon good cause shown. It does not, therefore, affect the question as to the materiality of the matters contained in the alleged false affidavit, that the application for a new trial was not made within the time prescribed by law.

It is further insisted that, whether or not Blas Herrera said what defendant's affidavit charged he said could have had no effect in determining whether or not Louis Hernandez was guilty of the theft of the colt, and therefore the statements in said affidavit of defendant were not material. Blas Herrera had testified in behalf of the State on the trial of Louis Hernandez. While his statements, as detailed in defendant's said affidavit, might not have been competent evidence upon the issue of the guilt of Louis Hernandez, still they would, upon a proper predicate being laid, be admissible to affect the credibility of the witness Herrera, and to this extent at least would have been material even on the trial of Louis Hernandez. "Swearing to a falsehood necessarily and absolutely ineffective is not perjury; but it is otherwise when the falsehood is capable of a *prima facie*, though only temporary, effect;" and it can therefore make no difference what effect these alleged statements of Herrera might have had on the trial of Louis Hernandez, or whether or not they would have been admissible on that trial. If they were competent to be considered on the motion for a new trial, and were material with respect to such motion, and might have any effect upon the decision of the judge thereon, no matter how remote, contingent or ephemeral, they would be material within the meaning of the law. (2 Whart. Cr. Law, § 1282; 3 Greenl. Ev., § 195.) It is not with reference to the trial of Louis Hernandez that the materiality of the statements in defendant's affidavit must be considered and tested, but they must be viewed with reference to their bearing upon the motion for a new trial, and when thus viewed we think their materiality is evident.

Without further discussing the exceptions made to the indictment, we will say that, notwithstanding the difficulty of framing a good indictment upon the rather complex facts of this case, the pleader has succeeded in preparing an indictment which, in our opinion, is unexceptionable, and we commend him for the care and skill evidenced by so perfect a pleading.

It is earnestly contended by defendant's counsel that the testimony of Blas Herrera, the only witness who testified to the falsity of the statements contained in defendant's alleged false affidavit, was not corroborated by any other evidence, and that therefore the court should have instructed the jury to acquit the defendant.

In the alleged false affidavit of defendant he stated that, about six months prior to the time of making said affidavit, Blas Hernandez, Sostenes Carrasco, and George De la Zerda said to him, "let us brand a colt, a filly colt of Sam Barker, with the brand of Louis Hernandez, and afterwards notify Barker that Louis Hernandez

had branded the filly." He, the affiant, replied that he would not do so. Blas Hernandez then said, " I will do it." Afterwards, Sostenes Carrasco said to affiant: " We (meaning Blas Hernandez, Sostenes Carrasco and George De la Zerda) branded the filly of Barker with the brand of Louis Hernandez, and then killed the mare." Each of the statements contained in said affidavit is assigned as perjury. It is averred in the indictment, in an *innuendo*, that " Blas Hernandez " meant Blas Herrera, and it seems to have been conceded throughout the trial that the two names referred to and meant the same person, though we find no evidence of that fact in the record. We merely call attention to this matter without pausing to consider and determine the effect of the omission to prove the *innuendo*, as counsel for appellant has not presented the question in his argument or brief.

On the trial the State, over the objections of the defendant, was permitted to introduce evidence tending to establish the guilt of Louis Hernandez of the theft of the colt, it being the same colt referred to in defendant's said affidavit, and also to read in evidence the record of the conviction of said Louis Hernandez of said theft. This testimony was relied upon by the prosecution and argued to the jury as corroborative of the testimony of the witness Blas Herrera as to the falsity of the statements in defendant's said affidavit, and is so relied upon and argued in this court. It is earnestly insisted by the counsel for appellant that this testimony was irrelevant, was not corroborative to any extent, and was, therefore, inadmissible.

Our statute provides that, "in trials for perjury, no person shall be convicted except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence, as to the falsity of the defendant's statements under oath; or upon his own confession in open court." (Code Crim. Proc., art. 746.) And it is further provided that, " in all cases where by law two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction." (Code Crim. Proc., art. 745.) These are but statutory declarations of the common law regulating prosecutions for the crime of perjury, and are founded on substantial justice. (*Gabrielski* v. *The State*, 13 Texas Ct. App., 428.) In such prosecutions, where the evidence presents " only oath against oath," it is insufficient to warrant a conviction. (2 Bish. Cr. Proc., § 927.) But what is corroborating evidence? We have no statute which

defines it.   Mr. Bishop, upon this subject, says:   "By the modern doctrine, a second *witness* is not required to turn the scale against the defendant's oath, but circumstances or facts otherwise appearing may suffice.   For example, independent corroboration of the testifying witness may be adequate.   So, in the opinion of most courts, may be the defendant's declarations contradictory of the testimony for which he is on trial.   Nor would it be correct to say that the corroborating or ancillary evidence or circumstances must be of weight equal to the testimony of one witness.   There must simply be enough plainly to turn the scale against the defendant's oath." (2 Bish. Cr. Proc., § 932.)   But, as said by Mr. Wharton, "it must go beyond slight and indifferent particulars;" but he further says that "we may view it as settled that, whenever the falsity of the defendant's statement can be proved beyond a reasonable doubt, then there may be a conviction."   (Whart. Cr. Ev., § 387.   See, also, 3 Russell on Crimes, 9th ed., 78.)

Our statute, in using the words "*strongly corroborated*," means that the corroborating evidence must relate to a material matter, that is, must tend to show the falsity of defendant's oath, and, taken all together, it must be, in the opinion of both the court and the jury, *strong*, that is, cogent, powerful, forcible, calculated to make a deep or effectual impression upon the mind.   But this character of corroborating evidence may be produced by the proof of independent facts and circumstances which, when considered separately, would not be sufficient, but when considered in the concrete would be *strong*.   In other words, the corroboration may be by circumstantial evidence, consisting of proof of independent facts which together tend to establish the main fact, that is, the falsity of the oath, and which together strongly corroborate the truth of the testimony of the single witness who has testified to such falsity.

Does the evidence which tends to prove the guilt of Louis Hernandez, of the theft of the colt, tend in any degree to show the falsity of defendant's oath?   Mr. Wharton says that the relevancy of evidence is to be settled by free logic, unless otherwise settled by statute or controlling precedent.   All facts that go either to sustain or impeach a hypothesis logically pertinent are admissible.   But no fact is relevant which does not make more or less probable such a hypothesis.   Relevancy, therefore, involves two distinct inquiries to be determined by logic, unless otherwise arbitrarily prescribed by jurisprudence: 1. Ought the hypothesis proposed, if proved, to affect the issue?   2. Does the fact offered in evidence go to sustain this hypothesis?   (Whart. Cr. Ev., § 24.)

Now the hypothesis here proposed by the State is that Louis Hernandez branded and stole the colt. Is this hypothesis logically pertinent to the issue in this case, which issue is, did the defendant swear falsely when he stated that Blas Herrera proposed to brand the colt, and when he stated that Carrasco said they, Carrasco, Herrera and De la Zerda, had branded the colt and killed the mare? We confess that this question is, in our opinion, a difficult one to answer clearly and satisfactorily, and we have been unable to find any adjudicated case where a similar question has been determined. After bestowing upon it much thought, we conclude that the hypothesis that Louis Hernandez committed the theft of the colt pertinently bears upon the issue in this case. If he committed the theft, it is not probable that Herrera, Carrasco and De la Zerda also committed it, or that Carrasco told the defendant they had committed it. The commission of the theft by Louis Hernandez is a circumstance which, in our judgment, tends to show the improbability of defendant's statements that Herrera, Carrasco and De la Zerda had proposed to commit the same theft, by branding the same animal in Louis Hernandez's brand, and that Carrasco had afterwards told him that they had branded said colt and had killed the mare. It is a very singular coincidence that Herrera, Carrasco and De la Zerda should propose to commit the very offense which Louis Hernandez, without any connection with them, afterwards committed, and that they should admit having committed it in exactly the same manner that it was committed by Louis Hernandez. While the fact of Louis Hernandez's guilt may be a very slight circumstance in corroboration of Herrera's testimony as to the falsity of the defendant's oath, it is still a circumstance of a corroborative nature, and therefore relevant and admissible. Standing alone, this circumstance would not, in our opinion, be strong corroborative evidence within the meaning of the law, and had it been the only corroborative evidence, the court should have directed an acquittal.

It is asserted by counsel for defendant that there is no other corroborative evidence in the record. We do not agree to this assertion. Defendant stated in his affidavit that Herrera, Carrasco and De la Zerda were all present when the conversations which he details occurred. These, he says, took place about six months prior to the time of his making the affidavit. He made the affidavit on the 26th day of January, 1882. Six months prior to that date would have been in July, 1881. The theft of the colt occurred in the spring of 1881. De la Zerda was taken sick in January or February, 1881, went to San Antonio for medical treatment, and remained there

until he died in the spring of 1881; but the exact date of his death is not stated. It is very clear from the testimony that De la Zerda was not alive after the spring of 1881, and yet defendant's affidavit asserts in effect that he was alive in the summer of 1881, and was present and participating in the conversations about the colt. It also appears from a comparison of dates that these conversations took place *after* the theft had been committed, that is, after the spring of 1881, and yet he states that Herrera proposed to brand the colt, and said he would brand it. These manifest discrepancies in dates afford, we think, corroborative evidence of a very persuasive character, and, when considered in connection with the other facts and circumstances, we do not think the court erred in refusing to direct an acquittal, but very properly submitted the question as to the sufficiency of the evidence to the jury.

M. G. Anderson, an attorney at law, and who was the attorney of Louis Hernandez in the cause in which the alleged false affidavit by defendant was made, was introduced as a witness in behalf of the State on the trial of this cause, and testified in substance that the defendant said to him: "I want to do all I can for my kinsman Louis Hernandez, who has been convicted to the penitentiary." Witness thereupon heard defendant's statements and reduced the same to writing, and read over and explained the writing to the defendant, and thereupon the defendant swore the contents thereof before George Dashiell, the clerk of the district court. Defendant told witness to use said paper in support of the motion for a new trial in the Louis Hernandez case, which witness did, the same being the affidavit upon which the perjury is assigned. When the testimony of this witness was offered, defendant objected to it upon the ground that Anderson, being the attorney of Louis Hernandez, would not be permitted to testify as to any fact which had come to his knowledge by reason of such relationship. This objection was overruled and the defendant excepted.

Our statute provides that "an attorney at law shall not disclose a communication made to him by his client during the existence of that relationship, nor disclose any other fact which came to the knowledge of such attorney by reason of such relationship." (Code Crim. Proc., art. 733.) This is substantially the well settled rule of the common law. (*Sutton* v. *The State*, 16 Texas Ct. App., 490.) Mr. Greenleaf says: "The rule is clear and well settled that the confidential counselor, solicitor, or attorney of the party cannot be compelled to disclose papers delivered, or communications made to him, or letters or entries made by him in that capacity. This

protection, said Lord Brougham, is not qualified by any reference to proceedings pending, or in contemplation. If, touching matters that come within the ordinary scope of professional employment, they receive a communication in their professional capacity, either from a client or on his account and for his benefit in the transaction of his business, or, which amounts to the same thing, if they commit to paper in the course of their employment on his behalf matters which they know only through their professional relation to the client, they are not only justified in withholding such matters, but bound to withhold them, and will not be compelled to disclose the information or produce the papers in any court of law or equity, either as party or as witness." (1 Greenl. Ev., § 237.) Mr. Wharton says this " privilege extends to all knowledge possessed by the lawyer which he would not have obtained if he had not been consulted professionally by his client." (1 Whart. Ev., § 577.) Mr. Stephen says: "No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication, oral or documentary, made to him as such legal adviser, by or on behalf of his client, during, in the course, and for the purpose of his employment, whether in reference to any matter as to which a dispute has arisen or otherwise, or to disclose any advice given by him to his client, during, in the course, and for the purpose of such employment. It is immaterial whether the client is or is not a party to the action in which the question is put to the legal adviser." And again this eminent author says: "The tendency of modern decisions has been to extend rather than to narrow the rule, from a conviction that, though sometimes the cause of justice might be advanced by compelling disclosures, the evils that would result would greatly overbalance the possible advantages." (Stephen's Ev., arts. 115, 116. See, also, upon this subject, Roscoe's Cr. Ev., 7th ed., pp. 150 and 828, and 1 Wait's Act. & Def., p. 468.)

Our statute, we think, states the rule more clearly and more comprehensively than any of the authorities to which we have referred. It extends the privilege to *any fact which came to the knowledge of the attorney by reason of such relationship.* There is no qualification except that it must be a fact which he learned by reason of his relationship as an attorney to the business to which such fact has reference. It is not required that information of such fact shall come from the client. It matters not from what source it has been obtained; if it was obtained because of the relationship of attorney in and about that particular business, it is privileged. Now, apply

this rule to the testimony of Anderson. He was the attorney of Louis Hernandez in the theft case. As such attorney he was approached by the defendant, and in the capacity of such attorney the defendant made to him, and he received, certain statements having reference to the Louis Hernandez case. All that transpired between Anderson and the defendant had reference to said case, and all the information obtained by said Anderson from the defendant was obtained by reason of his relationship as an attorney in that case.

It is clear to our minds that the matters testified to by Anderson were, under our statute, if not at common law, privileged and should not have been permitted. We are further of the opinion that Anderson's testimony was material and calculated to prejudice the rights of the defendant, and that therefore the admission of it was such error as requires that the conviction be set aside.

It is insisted by counsel for defendant that, "to authorize a conviction for perjury on a false statement contained in an affidavit made by a marksman (and especially if the affidavit be in a language not understood by the affiant), it must be proved by the officer who administered the oath that the affidavit was read over to the affiant, and explained to him, and that other evidence of his knowledge of the contents of the affidavit will not be allowed. Counsel cites us to but one authority in support of this proposition, which is the English case of *Rex* v. *Hailey*, 1 Car. & Payne, 258. In that case it was held as contended for in the above proposition. Justice Littledale said: "As the defendant is illiterate, it must be shown that she understood it. In those cases where the affidavit is made by a person who can write, the supposition is that such person was acquainted with its contents; but in the case of a markman it is not so. If in such a case the master, by *jurat*, authenticates the fact of its having been read over, we give him credit; but if he does not, and the fact were so, he ought to be called to prove it. I should have difficulty in allowing the parol evidence of any other person to that fact." This case is cited by Mr. Roscoe, without comment, in his work on Criminal Evidence, page 821. Mr. Greenleaf says: "If the document appears to have been signed by the prisoner with his name, it will be presumed that he was not illiterate, and that he was acquainted with its contents; but, if he made his *mark* only, he will be presumed illiterate, in which case some evidence must be offered to show that it was read to him, and for this purpose the certificate of the magistrate or officer in the *jurat* will be sufficient." He cites no other authority except *Rex* v.

*Hailey, supra.* Mr. Russell says: "If perjury is assigned upon an affidavit made by a marksman, either the *jurat* must state that the affidavit was read over to the defendant, or it must be proved that it was so read," and he cites *Rex* v. *Hailey* as authority. (3 Russell on Crimes (9th ed.), p. 98.)

We conclude from these authorities that the proposition of defendant's counsel is the law, except in so far as it confines the mode of making proof of the defendant's knowledge of the contents of the affidavit to the testimony of the officer who administered the oath. We can see no good reason why the fact of such knowledge should not be, like any other fact, proved by any competent evidence. Thus, if any person other than the officer read over and explained the affidavit to him, before he swore to it, or if he stated that it had been read over and explained to him, or that he knew and understood its contents, we can perceive no reason why such evidence would not be as competent and as satisfactory proof of his knowledge as would be the *jurat*, or the testimony of the officer who administered the oath to him.

In the case before us, the affidavit was subscribed by the defendant by making his mark thereto. The affidavit is in the English language, and it was proved not only that the defendant was illiterate, but that he was not familiar with the English language. The officer's *jurat* to the affidavit is in the usual form, that is, "Sworn to and subscribed before me," etc., and does not certify that the document had been read over to the affiant, or that he understood the contents thereof. Dashiell, the officer who administered the oath, testified that he could not say whether or not the defendant knew the contents of the affidavit at the time he signed and swore to it, and that his recollection was that he did not read it over to him but simply asked if he knew the contents of it, and, upon receiving an affirmative answer, administered the oath. He does not state, however, to whom he propounded the question as to defendant's knowledge of the contents of the affidavit, whether to the defendant himself or to Anderson, the attorney, who was present and presented to him the affidavit; nor does he state whether the defendant or said Anderson answered said question. If it had been testified by this witness that the question was propounded to and understood and answered affirmatively by the defendant, this, in our opinion, would have been sufficient proof of defendant's knowledge of the contents of the affidavit, without showing that it had been read over to him. But Dashiell's evidence, as we find it in the record, does not, we think, prove that defendant had knowledge of the contents

of the affidavit at the time he swore to it. True, this knowledge was fully shown by the testimony of Anderson, but his testimony being, in our opinion, incompetent, cannot be considered for any purpose.

Because the court erred in admitting the testimony of the witness Anderson, and because the evidence does not show that defendant knew the contents of the affidavit at the time he made it, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered May 6, 1885.]